UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:05CR136 HEA |
| | ) |
| RYAN GARCIA and | ) |
| SARAH THESS, | ) |
| | ) |
| Defendants. | ) |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Magistrate Judge David D. Noce's Order and Recommendation that Defendant Garcia's Motion to Suppress Evidence and Statements, [#39], be denied. An evidentiary hearing on the matter was held before Judge Noce on April 12, 2005. Defendant Garcia has filed written objections to the Report and Recommendation. The Government has not filed objections. Pursuant to 28 U.S.C. § 636, the Court will therefore conduct a *de novo* review of those portions of the Report and Recommendation to which Defendant Garcia objects.

**Facts and Background**

On April 1, 2003, St. Louis County Police Detective Damon Kunneman and Detectives Wall and Verhaeghe were on duty at the Target store on Rusty Road in St. Louis County, Missouri to investigate the purchases of ephedrine-based cold

medication, a methamphetamine precursor.  Detectives Kunneman, Wall and Verhaeghe were assigned to the Methamphetamine Precursor Diversion Task Force, which investigated high-intensity drug trafficking areas.  Wall and Verhaeghe were outside the store in their vehicles, and Kunneman was in the loss-prevention area of the store utilizing the hidden television cameras to watch the cold-medicine aisle.

At approximately 2:35pm, Det. Kunneman saw a customer, Defendant Garcia, enter the cold-medicine aisle and select two boxes of cold medicine containing ephedrine.  Garcia paid for them and left the store, and Kunneman radioed the other officers that the customer had made a suspicious purchase.  The Task Force members observed Garcia enter a white car, which was being driven by Co-Defendant Sarah Thess.  Officers, who were in individual marked cars, followed Garcia and Thess to two Walgreens stores and observed them purchase two boxes of similar cold medicine at each location.  Officers then followed Garcia and Thess to a nearby hobby store where Defendants purchased glass test tubes.[1]  Kunneman radioed for officers to stop the car after witnessing the purchases by Garcia and Thess and Thess' repeated turns in the car without using her turn signal.  After uniformed Police Officer Lohr stopped Thess and Garcia in his marked car, Det. John Wall approached to speak to the two

---

[1] Det. Kunneman knew from his experience and training that glass test tubes are frequently used to smoke methamphetamine.

occupants. Wall identified himself and stated he was with the drug unit. He asked Thess to step out of the car, which she did. Det. Verhaeghe arrived and asked Garcia to step out of the car, which he also did. Wall told Thess that they were conducting a drug investigation and asked her whether she would consent to a search of the car. Thess orally consented without any promises or coercion.

Det. Kunneman arrived and was advised by Wall that Thess consented to a vehicle search. Kunneman then proceeded to search the car and discovered two empty boxes of Walgreens-brand pseudoephedrine Hcl (60 mg., 48-count), two boxes of WallAct pseudoephedrine Hcl (60 mg., 48-count), two small bottels of Durex iodine crystals (4 oz. each), and three Walgreens receipts. Det Kunneman arrested Garcia and Thess and read them their constitutional rights individually and separately. Garcia stated he would answer the officers' questions,[2] so Kunneman asked Garcia where the additional chemicals were located.[3] Garcia told Kunneman that the chemicals were at Thess' mother's house, which was at 7575 Skull Bones Rd. in Jefferson County, Missouri. Garcia also told Kunneman that Thess was not involved, but it was Kunneman's experience that methamphetamine manufacturers usually work in pairs.

---

[2] Garcia stated that he understood his rights, and he did not appear to the officers to be under the influence of drugs or alcohol.

[3] Det. Kunneman testified that it is his experience that those who purchase iodine crystals are actually involved in the manufacture of methamphetamine.

Thess told Kunneman that the other chemicals were located in her room and in the detached garage. Kunneman then obtained written consent from Thess to search her room and the garage. Thess gave her consent to the search voluntarily, without any threat, promise or coercion.

Detectives went to 7575 Skull Bones, searched the detached garage, and found Red-Devil lye, and an empty bottle of iodine, camp fuel, and other liquids and pills, most of which were in their original retail containers. Kunneman testified at the hearing that the presence of these chemicals indicated that at one time the garage had been used as a methamphetamine lab. Kunneman instructed Wall to take Garcia to jail and, if possible, obtain a written statement from him.

At the jail, Det. Wall again advised Garcia of his constitutional rights. Garcia indicated that he understood them and that he would make a statement. Wall provided Garcia with a written warning and waiver of rights form after filling out the biographical and introductory portion. Garcia wrote out a statement and signed the form. He and Thess were released shortly thereafter.

On June 2, 2003, a domestic disturbance was reported at 4575 Main Street, House Springs, in Jefferson County, Missouri, and Deputy Sheriffs Jarret Abelov and Roger Winsler responded to the residence. Deputy Abelov knocked on the front door and Winsler went around to the back of the building. Sarah Thess opened the front

door, and though there was no noise or disturbance, Thess appeared to have been in an argument. She told Abelov that she called police because she had been in a fight with her boyfriend. Abelov then entered the apartment. In plain view, Abelov saw a woman's purse, Red-Devil lye, plastic bags with powder, a clear mason jar containing a clear liquid, and an empty bottle of Heet antifreeze. Abelov, who had received methamphetamine precursor recognition training, believed that the items were ingredients used in the production of methamphetamine and that the apartment looked like an inactive methamphetamine lab. Abelov arrested Thess for possession of methamphetamine and drug paraphernalia and advised Thess of her constitutional rights. Thess told Abelov that she waived her rights and orally consented to a search of her purse. Abelov searched the purse and discovered a glass pipe.

Outside, Deputy Winsler saw a man running from the rear of the building, so he yelled for him to stop. A minute later, Winsler found Defendant Garcia hiding in a brush pile. Winsler drew his weapon and ordered Garcia out into the open, and Garcia complied. Winsler handcuffed Garcia and told him he was being detained pending the investigation of a domestic disturbance at the residence. Winsler performed a patdown of Garcia's clothing and discovered in his right front pocket a blue vinyl zipper bag which contained a zip-lock plastic bag filled with a white substance and a glass tube. Garcia was then charged with possession of a controlled substance and drug

paraphernalia.

A search of the residence was conducted by Deputy Womack after he arrived on the scene and obtained consent to search by Thess. Thess was given a written consent to search form, which she read and signed. Womack and four other deputies searched the residence and discovered a methamphetamine lab. They seized several precursor components, including containers with clear liquid, one gallon of camping fuel, bug sprayer, muriatic acid, an empty container of Heet, jars of coffee filters, and red phosphorus. The items were removed from the residence.

On March 29, 2004, upon seeing a red Chevy Cavalier being driven without a front license plate, Corporal John Kozel, of the Jefferson County Sheriff's Office, ran a check of the car's rear license plate number and was advised that the plate was registered to a different vehicle in violation of Missouri law. Kozel stopped the car in a gas stateion on Industrial Road and State Highway 30 in Jefferson County. There were three occupants in the car. Defendant Garcia was the driver, and the other two occupants were Ryan Willford and Danielle Lambert. When Kozel approached the car, he saw bottles of peroxide and Heet antifreeze inside. Kozel asked Garcia for his license and registration, but Garcia stated that his license was suspended. Kozel confirmed this through the police dispatcher. Garcia was then asked to step out of the car, which he did, and Kozel told him he was being arrested for driving with a

suspended license and for possession of methamphetamine precursor chemicals. Kozel attempted to arrest Garcia, but Garcia shoved Kozel backwards, twisted away, and ran down the shoulder of Hwy 30. Kozel yelled out to Garcia to stop, but Garcia cursed at him and kept running.

After he radioed for backup, Kozel returned to the car, where he saw Lambert and Willford "fidgeting." Lambert was attempting to conceal the peroxide and Willford was trying to close the glove compartment, which Kozel saw contained a bag with pills and white powder in it. Kozel instructed Willford and Lambert to get out of the car, which they did, and he handcuffed them.

Kozel conducted an inventory search of the vehicle after calling for a tow truck to take custody of the car. In his search, Kozel discovered a bag of a powdery substance under the passenger seat and a burnt residue. He also found a pipe with a burnt residue, and clean baggies (1.5" X 1.5" in size), lock-picking tools, blister packs from empty ephedrine boxes, match tips, acid, and iodine. Kozel read Willford and Lambert their rights, and the two made statements to police which incriminated themselves and Garcia. A warrant was later issued for Garcia's arrest.

On April 21, 2004, Cpl. Kozel and other officers went to a mobile home on 10712 Dell Lane in Grubville, Missouri to arrest Garcia on the outstanding warrant issued on March 29, 2004. Kozel knocked on the front door, which was opened by a

person other than Garcia, and Kozel saw Garcia inside the residence.  When Kozel entered, Garcia ran down the hallway and attempted to escape through the back of the mobile home.  Officers pursued Garcia, and despite Garcia's kicking, punching, and attempts to break free from officers, he was arrested and driven to jail.

During the booking process, Kozel advised Garcia of his constitutional rights, which Kozel read from an Advise of Rights form.  Kozel handed Garcia the form, and Garcia placed his initials next to each statement of a right and then signed the form, thereby indicating that he understood his rights and waived them.  Garcia then made the following statement, which was written and signed without any threat or coercion to Garcia:

> I picked up Danielle Lampert and Ryan Wooford to take Danelle Lampert and Ryan to Danelles.  While we were at the Convientiant food mart Officer Kozel stopped in and Asked me why I didn't have a front plate and I said I don't have one, he asked me my name and I.D.  I told him I was suspended licence.  He got out after he ran me threw the computer and I came back with no warrents.  Kozel walked towards my car and asked what the heet was for and I said I bought it to put in my gas tank.  Then the officer told me I was under arrest for driving while suspended.  Kozel then told me to hold still while he search my pockets and then I took off running and left a car that was registered to someone else.  Nothing in the car belonged to Danelle Lampert or Ryan Wooford it belonged the The Registree of the car.  Then the car was impounded and the police were looking for me.  And they found me.  Everything in the car was mine.  The Chemicals and anything that is used in Meth was mine.

On February 12, 2005, Deputy Sheriff Scott Poe was talking with other officers at a gas station at Highway 141 and Romaine Creek Rd. in Jefferson County, Missouri, when he saw Defendant Garcia purchase four bottles of Heet antifreeze and walk outside toward a pickup truck. Poe was aware that Garcia had been arrested on a prior occasion in a methamphetamine-related case. Poe thought Garcia's purchase was suspicious since it was only 40 degrees Fahrenheit outside and too warm for a car to need antifreeze. Poe and the other officers decided to approach Garcia and ask about the purchase, but before being asked a question, Garcia told the officers "I got pills in the truck–I'll do whatever I have to." Poe then advised Garcia of his constitutional rights and detained him for further investigation. Poe asked Garcia if he and one of the other officers could search the pickup truck and Garcia said that they could. When asked if there was anything in the truck that would be of interest, Garcia responded that there was a bag in the truck containing finished product and marijuana. Poe and the other officer searched the truck and found a quantity of methamphetamine, marijuana, a bag of several blister packs of 60 mg pseudoephedrine Hcl pills, and several loose pills (a total of 1,319 pills). In the bed of the truck was a five-gallon gas can of Coleman fuel, a small container of ether, the four bottles of Heet Garcia had just purchased, and four empty bottles of Heet. When asked why he had the pills, Garcia at first stated that he planned to trade them for methamphetamine, but then admitted to

officers that they were for his own personal use. Garcia admitted to police, "I'm fucked--it's my lab." Garcia was searched incident to the arrest, but nothing was found on his person.

## Discussion

Defendant Garcia objects to Judge Noce's findings of fact "as a whole" as articulated in the Report and Recommendation, arguing that the best evidence of the facts in this case can be adduced from Court records, transcripts, and exhibits. The Court agrees with Defendant Garcia--that the best evidence of the facts in this case can be adduced from Court records, transcripts, and exhibits, and after a review of same, the Court concludes that Judge Noce's findings of fact and recommendations "as a whole" were logical, sound, and well reasoned based on the evidence presented. As such, Defendant's objection with regard to Judge Noce's findings of fact is overruled. Defendant's objections are limited to findings of fact, as he makes no objections to Judge Noce's conclusions of law.

Defendant Garcia specifically objects to Judge Noce's finding that the search of Garcia's vehicle was performed after officers obtained Garcia's consent to search and that Garcia's numerous written and oral statements made to officers were provided freely and voluntarily. The Court will address each of these objections individually.

**Search of Defendant's Vehicle**

Defendant Garcia objects to Judge Noce's finding that Garcia voluntarily consented to the search of his vehicle on February 12, 2005. Defendant makes no objections with regard to the vehicle searches that took place on April 1, 2003 and March 29, 2004, nor does he object with regard to the residential search of 4575 Main Street in House Springs on June 2, 2003.

The record reveals that on February 12, 2005, Defendant Garcia was read his constitutional rights and detained for further investigation by Deputy Sheriff Poe after claiming to have pills in his possession. Garcia was specifically asked by Poe whether Poe and the other officer could search the pickup truck. Garcia responded in the affirmative. When asked whether the truck contained anything of interest, the record reflects that Garcia stated that the truck contained finished product (methamphetamine) and marijuana. A search of the truck revealed this assertion by Garcia to be true, and other incriminating precursor chemicals were also discovered. At the hearing before Judge Noce on April 12, 2005, Deputy Poe testified to these facts and stated on the record that no promises were made to Garcia to elicit his consent to search the vehicle. Nothing in the record, transcripts, or exhibits reveals this testimony to be untrue. As such, Defendant Garcia's objection to Judge Noce's finding of fact Garcia voluntarily gave consent to search his vehicle on February 12, 2005 is overruled.

**Defendant's Written and Oral Statements**

Defendant Garcia also objects to Judge Noce's findings of fact with regard to the written statements Garcia made to police on April 1, 2003 and April 21, 2004 and the oral statements he made on February 12, 2005. Garcia claims his statements were not provided freely and voluntarily and "believes" that promises were made to him in order to elicit his statements.

At the hearing before Judge Noce, Detective Kunneman testified to the facts as they occurred on April 1, 2003. The evidence showed that Garcia was advised of his constitutional rights, and he stated that he understood them. Garcia was provided with a written warning and waiver of rights form, on which he wrote out a statement and signed. No promises were made to Garcia to elicit his statement, and nothing in the record reveals otherwise.

Corporal Kozel testified at the hearing to the facts as they occurred on March 29, 2004 and April 21, 2004. Kozel testified that on April 21, 2004, after executing an arrest warrant for acts committed by Garcia on March 29, 2004, Garcia made a written statement regarding the March 29 incident, and that the statement was given freely and voluntarily. There is no evidence in the record that any promises were ever made to Garcia to elicit his April 21, 2004 statement. In fact, Kozel testified that at the time Garcia was writing his statement, Kozel was busy filling out paperwork.

Finally, Defendant Garcia objects to the finding that his oral statements made to

Deputy Poe on February 12, 2005 were made voluntarily. Again, Poe testified to the facts surrounding the February 12, 2005 incident and stated on the record that no promises were made to Garcia. Nothing in the record, transcripts, or exhibits reveals this testimony to be untrue. Therefore, Defendant Garcia's objections to Judge Noce's findings of fact that Garcia voluntarily made statements on April 1, 2003, April 21, 2004, and February 12, 2005 are overruled.

The Court concludes Judge Noce's findings of fact and recommendations were logical, sound, and well reasoned based on the evidence. Therefore, the Court adopts Judge Noce's Report and Recommendation in its entirety.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Garcia's Motion to Suppress Evidence and Statements, [#39], is denied;

Dated this 14th day of July, 2005.

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE